930 F.2d 1163
 59 USLW 2652
 Elliot STOKES and Jeff Goldstein, Plaintiffs-Appellants,
v.
CITY OF MADISON, a Municipal Corporation Within the State of
Wisconsin and Wisconsin Mutual Insurance Company,
a Corporation Licensed to do Business in
the State of Wisconsin,
Defendants-Appellees.
 No. 90-1954.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 19, 1990.
Decided April 19, 1991.
As Amended on Denial of Rehearing and
Rehearing En Banc June 6, 1991.
 
 Mark F. Borns, Tammy S.G. Baldwin, Borns, Macaulay & Jacobson, Madison, Wis., for plaintiffs-appellants.
 Bradley D. Armstrong, Michael S. Anderson, Axley & Brynelson, Madison, Wis., for defendants-appellees.
 Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 This case presents a First Amendment challenge to two Madison ordinances. One specifies the times during which sound amplification devices can be used on the city streets and on the State Street Mall, and the other governs the issuance of parade permits (called Street Use Permits). Appellants argue that the ordinances constitute a prior restraint and impose constitutionally infirm time, place and manner restrictions on protected speech. The district court found the ordinances constitutional. We affirm, on the basis that the regulations, as implemented, contain neither an impermissible prior restraint nor an unreasonable time, place and manner restriction.
 
 I.
 
 2
 Elliot Stokes and Jeff Goldstein participated in a rally on March 16, 1989, sponsored by the El Salvador Action Coalition at the State Street Mall (the Mall) in Madison, Wisconsin. The event's organizers had received a Street Use Permit that permitted them to hold the rally, but because they had not applied to use sound amplification devices, their permit stated, "No amplification devices will be permitted per City ordinance." When Goldstein attempted to speak to the assembled crowd, several people complained that they could not hear him, so he attempted to speak through a hand-held, battery-powered bullhorn. He was immediately arrested. He passed the bullhorn to Stokes, who also was arrested when he refused to give the bullhorn to the police.
 
 
 3
 Municipal regulations govern use of amplification devices both on Madison streets in general and at the Mall in particular. Madison General Ordinance (M.G.O.) 24.04(3)(a)[1] prohibits the use of "any device, apparatus or instrument for the amplification of the human voice or any sound or noise, or other sound-making or sound reproducing device" except during the hours of 12:00-1:30 p.m. and 5:00-7:00 p.m. The regulation exempts amplified music from churches on Sundays or religious holidays, sound produced by emergency vehicles, sound otherwise approved by the state of Wisconsin and sound produced incidental to a Street Use Permit.
 
 
 4
 Another section of the ordinance, MGO 24.04(3)(b)(1), governs sound amplification specifically on the Mall by requiring the Mall Coordinator's permission to use any sound amplifying equipment. Such permission must be granted during the same hours as MGO 24.04(3)(a) permits amplification on the streets generally (12:00-1:30; 5:00-7:00), but authority to waive the prohibition at other times is in the Coordinator's discretion. The ordinance establishes procedures and timetables for appeal of the Coordinator's decision to the Parks Commission. The regulation does not specify criteria that the Coordinator must consider in evaluating a permit request and does not specify the Parks Commission's standard of review. The ordinance also grants the Parks Commission exclusive authority to grant permission in the "C4 commercial zoning district" for music or noncommercial messages during the Christmas holiday season.
 
 
 5
 The Coordinator processes requests for a waiver for times other than 12:00-1:30 and 5:00-7:00 by requiring the organizer to apply for a Street Use Permit, governed by M.G.O. 10.056(4)(b).[2] A "Staff Team," which the Coordinator chairs, evaluates applications. The ordinance specifies that the Team is to employ the Events Criteria and Street Use Policy adopted by the Common Council. See Order (Mar. 30, 1990) at 7-8. These criteria include both "operational" factors (organizational structure of the sponsor, physical size of the event, conflicts with other activities, etc.), as well as some potentially content-based factors (appropriateness of event, past experience and "special problems," which include the general "health, safety and welfare" of residents). However, the stipulated facts indicate that the Team does not refer to the Events Criteria because it has settled on a generous interpretation of its mandate--no request for a Street Use Permit has been denied to a party wanting to speak on the Mall. There have been approximately twenty-five such requests over the last five years.
 
 
 6
 Not appearing in the quoted sections of the ordinances are the fees for the two types of permits. Use of a sound amplifying device during the "permitted" time periods or during a "waived" period requires an electrical use permit, which costs $5.00 plus $.15 for each hour of use and which must be paid whether or not the sound amplification device requires electricity. A Street Use Permit usually costs $20.00 and requires proof of adequate insurance coverage. (The event organizers did not pay the $20.00 fee, presumably because they did not anticipate needing electricity.) The insurance provision is waived for students because of the University's blanket insurance policy. The bullhorn that Stokes and Goldstein used apparently ran on battery power.
 
 
 7
 In sum, Madison regulates sound amplification on the Mall with a two-tier regulatory structure. To use such a device during the "permitted" hours, an applicant receives, per the ordinance, automatic permission from the Mall Coordinator by applying for and receiving an electrical permit costing $5.00 plus $.15 per hour. At other times, a sound-amplification applicant must secure a $20.00 Street Use Permit. Apparently, no permit or permission is required and no fee is assessed to speak on the Mall without a sound amplification device at any time.
 
 
 8
 Following Stokes' and Goldstein's arrests, they sued Madison under 42 U.S.C. section 1983, alleging that M.G.O. 24.04 amounts to a prior restraint on protected expression and that both the sound amplification and Street Use Permit ordinances constitute unreasonable time, place and manner restrictions. They also argued that the fees are unconstitutional because they bear no relationship to the costs of administering the regulation. On cross motions for summary judgment and on stipulated facts, the district court dismissed the plaintiffs' claims and held for defendants. The court found M.G.O. 24.04 constitutional because the regulation is a permissible time, place and manner restriction; does not offend the establishment clause under Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); and is not an impermissible prior restraint because it regulates amplified speech and not speech per se. Furthermore, the court held that because officials grant all requests for Street Use Permits, they implement the regulation in a constitutional manner, citing Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
 
 II.
 
 9
 Plaintiffs challenge the ordinances on both a facial and "as applied" basis. Defendants challenge plaintiffs' standing, alleging that the regulations do not limit plaintiffs' right to unamplified speech and that the plaintiffs' injury is the result of their failure to apply for a permit. The district court made the ambiguous finding that:
 
 
 10
 in this case plaintiffs may not have standing under the "extraordinary doctrine" to facially challenge the ordinances because the ordinances regulate merely the amplification of speech and not speech itself. However, the Court will address the merits of plaintiffs' claims.
 
 
 11
 Order at 10. It is unclear why the district court reached the merits if standing was in doubt. However, because we conclude plaintiffs have standing, this anomaly has no significance.
 
 
 12
 In Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court held that a publishing company had standing to challenge on its face a licensing scheme, even before the company applied for a license. The Court reasoned that:
 
 
 13
 a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.... The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.
 
 
 14
 486 U.S. at 759, 108 S.Ct. at 2145. The Madison ordinances have the requisite nexus. First, the Mall Coordinator has the discretion to grant or deny a permit during hours other than 12:00-1:30 and 5:00-7:00. Second, the criteria employed by the Mall Coordinator and the Staff Team are sufficiently flexible to permit censorship to slip into regulatory decisions. Moreover, defendants admit that the Staff Team decides whether to grant permits for demonstrations without referring to the criteria in the ordinances, although to date all requests have been granted.
 
 
 15
 The authorities' willingness to grant licenses does not destroy plaintiffs' "as applied" standing. Defendants argue that it does, citing the Supreme Court decision in Ward, which provided that a reviewing court must consider any "limiting construction" that a state court or agency has placed on a statute. 109 S.Ct. at 2756. This argument confuses substantive review with standing. The class of plaintiffs eligible for standing includes all who are affected by its implementation. Here, that includes all who must apply for a permit, since they suffer the vagaries of discretion--benevolent or otherwise. See Staub v. City of Baxley, 355 U.S. 313, 319, 78 S.Ct. 277, 281, 2 L.Ed.2d 302 (1958) ("The decisions of this Court have uniformly held that the failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude review in this Court of a judgment of conviction under such an ordinance.").
 
 
 16
 This conception of standing is essential to protect against possibly chilling effects of imprudently drawn regulations. There may be parties who, looking at the regulation, are deterred from seeking an application. See Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) ("One who might have had a license for the asking may ... call into question the whole scheme of licensing when he is prosecuted for failure to procure it."); see also Lakewood, 486 U.S. at 756 & n. 6, 108 S.Ct. at 2143 & n. 6 (other examples of similar facial challenges). Plaintiffs therefore have standing to challenge the ordinances.
 
 III.
 
 17
 Our standard of review is well established. The judge below entered summary judgment for defendants, and we therefore accept all facts and inferences in the light most favorable to the plaintiffs. Schlifke v. Seafirst Corp., 866 F.2d 935 (7th Cir.1989). All First Amendment issues, save the district court's acceptance of stipulated facts, we review de novo.
 
 
 18
 A preliminary matter is the nature of the regulation at issue. The district court judge repeatedly refers to the regulations as one "ordinance." In fact, there are two provisions of M.G.O. 24.04 at issue, and they present different, if overlapping, issues for us to consider: first, whether the ordinance vesting discretion in the Coordinator to permit a sound amplification device on the Mall is an impermissible prior restraint; and second, whether the ordinance's specification of when and by whom amplified speech is permitted constitutes an unreasonable time, place and manner restriction. We address each issue in turn.
 
 A. Prior Restraint
 
 19
 Strongly disfavored as a means of speech regulation, a prior restraint exists when a regulation "[gives] public officials the power to deny use of a forum in advance of actual expression." Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975). Here, the Mall Coordinator and Staff Team have the discretion to deny speakers the use of sound amplification devices at times other than 12:00-1:30 and 5:00-7:00. This much appears directly on the face of the regulation, and the ordinance appears to contain the elements of a prior restraint:
 
 
 20
 In [prior restraint] cases, the plaintiffs asked the courts to provide relief where public officials had forbidden the plaintiffs the use of public places to say what they wanted to say. The restraints took a variety of forms, with officials exercising control over different kinds of public places under the authority of particular statutes. All, however, had this in common: they gave public officials the power to deny use of a forum in advance of actual expression.
 
 
 21
 420 U.S. at 553, 95 S.Ct. at 1243-44; see also Ward, 109 S.Ct. at 2763 (Marshall, J., dissenting) ("government's exclusive control of the means of communication enable public officials to censor speech in advance of its expression").
 
 
 22
 A prior restraint involves discretion over some form of protected expression, and Madison contends that only speech, not amplified speech, enjoys First Amendment protection. This is incorrect. The First Amendment protects effective speech, not merely uttered words, and effective speech sometimes requires that ideas be transformed into musical speech, loud speech, financial speech or other forms of expression that a casual reading of the First Amendment might not reveal as "speech." See Ward, 109 S.Ct. at 2753 (music); Federal Election Comm'n v. National Conservative Political Action Comm., 470 U.S. 480, 493, 105 S.Ct. 1459, 1466, 84 L.Ed.2d 455 (1985) (political financial contributions); Buckley v. Valeo, 424 U.S. 1, 4, 96 S.Ct. 612, 627, 46 L.Ed.2d 659 (1976) (same). In fact, the Court in National Conservative Political Action Comm. appears to endorse the idea that amplified speech is sometimes essential to effective communication and deserves protection:
 
 
 23
 [F]or purposes of presenting political views in connection with a nationwide Presidential election, allowing the presentation of views while forbidding the expenditure of more than $1,000 to present them is much like allowing a speaker in a public hall to express his views while denying him the use of an amplifying system.
 
 
 24
 470 U.S. at 493, 105 S.Ct. at 1467. Defendants contend otherwise, arguing that the demonstrators could have spoken effectively without the bullhorn by distributing leaflets or by reaching the audience with the natural voice. This contention is not frivolous, but it may be somewhat unrealistic given that there were up to 200 people present and seems irrelevant in deciding whether the activity is protected. Alternative channels may support a finding that a particular restraint on speech is justified, but they do not necessarily prove that the speech is unprotected.
 
 
 25
 Having determined that amplified speech is a protected form of expression and that the ordinance should be viewed as having the characteristics of a prior restraint, we now examine the constitutional status of the restraint. In general, prior restraints are highly disfavored and presumed invalid. New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). The Court has, however, carved out some exceptions. First, a powerful overriding interest justifies a narrowly drawn prior restraint. Such interests include national security matters, obscenity, incitements to violence and overthrow of orderly government. Near v. Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). The Madison ordinances fit none of these. Second, the Court has permitted restraints where procedural safeguards tightly control the discretion of the administrative authority and subject it to rapid judicial review. The Court has explained these safeguards:
 
 
 26
 We held in Freedman [v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ], and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of providing that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured.
 
 
 27
 Southeastern, 420 U.S. at 560, 95 S.Ct. at 1247. The Court's fear was the potential for censorship. "The settled rule is that a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.' " Southeastern, 420 U.S. at 559, 95 S.Ct. at 1247 (quoting Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965)). We note that although M.G.O. 24.04 has an appeal procedure, it lacks constitutionally adequate safeguards and could run afoul of this requirement. However, the Court recently announced a third exception: when a restraint is implemented in a constitutional manner, it should be upheld. "In evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered." Ward, 109 S.Ct. at 2756 (citing Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, n. 5, 102 S.Ct. 1186, 1191, n. 5, 71 L.Ed.2d 362, Lakewood, 486 U.S. at 770 & n. 11, 108 S.Ct. at 2150 & n. 11; United States v. Grace, 461 U.S. 171, 181 n. 10, 103 S.Ct. 1702, 1709 n. 10, 75 L.Ed.2d 736 (1983); Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972); Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953)). Instead of examining only the ordinance's language, we also examine its administration and implementation. The stipulated facts indicate that the Mall Coordinator and Staff Team have never denied a sound amplification or Street Use Permit with sound amplification rights to a party wanting to speak on the Mall. Stipulated Fact 12. The method of implementation has therefore obviated the potential harm of the prior restraint.
 
 
 28
 The ordinances do not, we note, rest on the most solid constitutional grounds. They appear to grant officials the authority to deny permits for content-related reasons. In addition, defendant's admission that the Staff Team and Mall Coordinator decide whether to issue the permits without reference to the Events Criteria, while perhaps benevolent, threatens to create the climate for the unbridled discretion that Lakewood warns against. Moreover, the ordinances do not contain the procedural requirements that Southeastern mandates for permissible prior restraints. Were it not for the generous practice of the city authorities, M.G.O. 24.04 might not survive constitutional scrutiny.
 
 B. Time, Place and Manner Restriction
 
 29
 Even if the discretionary aspects of M.G.O. 24.04 constitute an acceptable prior restraint, the restrictions on who can use sound amplification devices and when they can be used must be reasonable, narrowly tailored restrictions on the time, place and manner of speech. Time, place and manner restrictions must further a substantial governmental interest, be content-neutral and leave ample alternative channels of communication. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984); Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647-48, 101 S.Ct. 2559, 2563-64, 69 L.Ed.2d 298 (1981) (citing Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)).
 
 1. Government Interest in Regulation
 
 30
 We first assess whether the restriction furthers a legitimate governmental interest. Heffron, 452 U.S. at 649, 101 S.Ct. at 2565 ("A valid time, place, and manner regulation must also 'serve a significant governmental interest.' " (quoting Virginia Pharmacy Bd., 425 U.S. at 771, 96 S.Ct. at 1830)). Regulation of sound and noise, especially when competing values are threatened, has long been a recognized government interest. See Kovacs v. Cooper, 336 U.S. 77, 83, 69 S.Ct. 448, 451, 93 L.Ed. 513 (1949) ("[I]t is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities.").
 
 
 31
 The Mall is a unique public forum. A speaker's platform, an area for crowds to gather and a central location in Madison make it ideal for gatherings, political or otherwise. The Mall is, however, surrounded by buildings, including Memorial Library, and the city clearly has a legitimate interest in regulating the Mall in light of these competing demands. Moreover, the government's interest in maintaining limits on the sound level in Madison generally is also a permissible interest.
 
 
 32
 Madison's ordinances must also be narrowly tailored. The Court instructs that where a restriction is not content-based, as here, it need not be the "least-restrictive alternative." 109 S.Ct. at 2758. To be sure, a restriction may not burden more speech than is necessary to further the government's interest. But the Court defines the narrow tailoring requirement quite broadly: "So long as the means chosen are not substantially broader than necessary to achieve the government's interest ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. Madison's ordinances meet this test; they are reasonably tailored to accommodate the needs of speakers using bullhorns while furthering the government's interest in controlling the level of noise. Moreover, the test makes clear that the existence of other sources of noise that may be as loud as bullhorns does not require overturning the ordinance.
 
 2. Content Neutrality
 
 33
 It is imperative that regulations of time, place and manner be independent of the content of that speech. Hudgens v. N.L.R.B., 424 U.S. 507, 520, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976) ("[W]hile a municipality may constitutionally impose reasonable time, place, and manner regulations on the use of its streets and sidewalks for First Amendment purposes ... and may even forbid altogether such use of some of its facilities ... what a municipality may not do under the First and Fourteenth Amendments is to discriminate in the regulation of expression on the basis of the content of that expression.") (citations omitted). Permitting a content-based restriction would implement an impermissible prior restraint in disguise. At the core of the time, place and manner analysis is the concern that restrictions may favor one form of speech over another. Content neutrality requires "that the restriction 'may not be based upon either the content or subject matter of speech.' " Heffron, 452 U.S. at 648, 101 S.Ct. at 2564 (citing Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 536, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)). The Supreme Court has recently instructed that in evaluating a restriction, the government's purpose is the controlling consideration, not incidental effects on speakers or messages. Ward, 109 S.Ct. at 2754. A regulation is therefore content-neutral so long as it is "justified without reference to the content of the regulated speech." Clark, 468 U.S. at 293, 104 S.Ct. at 3069.
 
 
 34
 Appellants claim that the regulations are not content neutral because they exempt churches for music amplified on Sundays and religious holidays and because the same regulation creates a separate permit system for amplifying music or other noncommercial messages during the "Christmas holiday season" and at other times decided by the Commission. Plaintiffs argue with some force that the exemption for religious music is a content-specific distinction. Churches may, the argument goes, broadcast their musical message with impunity on Sunday mornings, whereas a similarly situated rally organizer cannot. Defendant responds that the regulation does not favor religion, merely that it exempts church-created music from the purview of the regulation. Defendant and the district court both point to a hypothetical minister who wants to speak on the Mall using a bullhorn--he must, like others, apply for the appropriate permit.
 
 
 35
 The regulation does not violate content neutrality, but not precisely for the reason advanced by defendant. The Madison City Council has evidently determined that amplified sound threatens to disturb library users and others around the Mall, and residents of Madison generally. The City Council has also apparently determined that churches (and, we presume, other houses of worship, although the ordinance does not so specify) do not, as a class, impose intrusive noise harm on residents to the same extent as many other producers of amplified sound. The church exemption is grouped with others that are non-intrusive and could be characterized as acceptable background noise. Where the perceived harm from speech is its intrusiveness (to some extent proxied by volume) and not its content, the relevant inquiry is not who broadcasts but what the decibel level and the sheer consciousness-piercing quality of the sound may be. The Council's decision is, in effect, a determination of intrusiveness based on the character of sound. Church bells on Sunday morning, for example, are a traditional and generally unobtrusive aspect of a tranquil environment. So is, subject to the Commission's approval, some music broadcast on the Mall during the Christmas season. Obviously, a bullhorn's delivery of a religious harangue would be something entirely different. The difference is not in "content" but in the nature of the sound in the context of an environment. In contrast, if the sound amplification ordinance required a screening of each speaker's message, combined with an exemption for religious messages, content neutrality would clearly be violated.
 
 
 36
 The district court concluded that the ordinance does not violate the Establishment Clause under the test of Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Except for appellant's citation of Widmar v. Vincent, 454 U.S. 263, 271, 102 S.Ct. 269, 275, 70 L.Ed.2d 440 (1981), reciting the Lemon test, neither party has briefed this issue and hence it is waived.
 
 3. Alternative Channels
 
 37
 The third prong of time, place and manner analysis is whether alternative channels exist to transmit the speaker's message. The more such channels, the more likely the restriction is reasonable. Heffron, 452 U.S. at 654-55, 101 S.Ct. at 2567-68.
 
 
 38
 Here, plaintiffs have several alternative channels. Speakers wishing to use amplification devices on the Mall could speak from 12:00 to 1:30 or from 5:00 to 7:00 (permission for which the Mall Coordinator must grant) or could apply for a Street Use Permit to speak at other times (permission for which has so far always been granted). Acquiring a permit is a perfunctory obstacle to the right to use the loudspeaker. In addition, as defendants point out, plaintiffs can communicate by leafletting or speaking without a sound amplification device. Although, as discussed earlier, amplified speech is protected expression, alternative means of transmitting the message support the reasonableness of the ordinance's restriction.
 
 
 39
 The district court appears to have relied in part on the absence of bullhorns at the time of the passage of the First Amendment for the proposition that using bullhorns is unprotected expression. Order at 16. This is inadequate to support the restriction. Many contemporary activities protected by the First Amendment were not imagined at the time of the passage of the Bill of Rights. If, as we hold today, amplified speech is protected, the relevant inquiry is whether alternatives to the bullhorn could be as effective, not whether the Framers had bullhorns in mind. Nonetheless, the availability of ready options to the speech restricted by regulation enhances the reasonableness of the ordinance.
 
 IV.
 
 40
 Plaintiffs' final argument is that the fees charged by the city for the two permits are unconstitutional because they bear no relation to the costs of administering the provisions. Supreme Court cases declaring such fees invalid have involved "flat license taxes" that do not bear a relation to the costs of the activity. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). These cases have recently been limited:
 
 
 41
 Our decisions in [Grosjean, Murdock, and Follett ], however, resulted from the particular nature of the challenged taxes--flat license taxes that operated as a prior restraint on the exercise of religious liberty.
 
 
 42
 Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378, 110 S.Ct. 688, 694, 107 L.Ed.2d 796 (1990).
 
 
 43
 The fee scale here is not a flat tax and is not, as alleged by appellants, an additional prior restraint. An applicant's payment of $5.00 plus $.15 for each hour of use is a rational accommodation for the electricity likely to be used. Similarly, when imposed, the $20.00 Street Use Permit fee is reasonably related to the costs of administering the permit system. The requirement that event sponsors provide proof of insurance coverage is also reasonable, especially in light of the City's practice of waiving this requirement for students covered by the University's blanket policy.
 
 V.
 
 44
 M.G.O. 24.04 imposes a prior restraint by requiring approval from the Mall Coordinator or the Staff Team before permitting sound amplification on the Mall. The ordinance is, however, constitutional in light of the apparent willingness of the city to grant permission to all applicants. Moreover, requiring users of sound amplification devices to seek permission for the hours of 12:00-1:30 and 5:00-7:00 or a Street Use Permit for other times is a reasonable time, place and manner restriction, despite the seemingly anomalous treatment of sound from churches and other exempted sources. The decision of the district court is therefore
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 MGO Section 24.04 Prohibition of Noises Disturbing the Public Peace
 (3)(a) No person, firm or corporation shall use or operate, or cause to be used or operated in or upon any public street, or from any aircraft, any device, apparatus or instrument for the amplification of the human voice or any sound or noise, or other sound-making or sound reproducing device except between the hours of 12:00 noon and 1:30 p.m. and 5:00 p.m. and 7:00 p.m., provided however that such restriction shall not apply to churches broadcasting or reproducing music by sound reproducing devices on Sundays or religious holidays, or to the production of sounds of any nature produced incidental to the operation of any governmental function or to the production of sounds of any nature produced incidental to the operation of any authorized emergency vehicle or to the use of sound producing equipment authorized pursuant to Wisconsin statutes or to the use of sound producing equipment used incidental to any street use or parade permit....
 (3)(b)(1) No person or group may use sound amplifying equipment on the State Street Mall at any time without the permission of the Mall Coordinator. Permission shall be granted for use of such equipment only during the hours of 12:30 p.m. to 1:30 p.m. and 5:00 p.m. to 7:00 p.m., and only when the equipment is more than fifty (50) feet from and the sound directed away from any adjacent building.... Waiver of any of the provisions of this subsection as they apply to the use of sound amplifying equipment on the State Street Mall can be obtained only from the Mall Coordinator at least two (2) days prior to the proposed use. Further appeal of the decision of the Mall Coordinator shall be made first to the Parks Commission and then to the Common Council as time permits. Failure of the Parks Commission to act thereon within forty-five (45) days shall be deemed a denial of any such appeal. Waiver of the provisions of this subsection as they apply to the use of sound amplifying equipment in the C4 commercial zoning district can be obtained only from the Parks Commission for amplifying music or other noncommercial messages during the Christmas holiday season or other special event under such conditions as the said Commission imposes.
 (3)(b)(2)(b) Sound amplification ... shall be permitted only during the hours of: 12:30 p.m.-1:30 p.m. and 5:00 p.m.-7:00 p.m. on the 700 block of State Street....
 (3)(b)(2)(e) During the University of Wisconsin final exam period, electronic sound amplification will be prohibited at all times on the 700 block of State Street.
 
 
 [2]
 MGO Section 10.056 Street Use Permit
 (4)(b) If the application [for a Street Use Permit] is for the State Street Mall/Capitol Concourse as defined in section 9.13(6) the [Staff] Team shall evaluate the application using the Events Criteria and Street Use Policy adopted by the Common Council and shall recommend to the State Street Mall/Capitol Concourse Operating Committee either approval or denial of the application. The State Street Mall/Capitol Concourse Operating Committee shall convene to consider the application and give notice of the meeting to the applicant. The State Street Mall/Capitol Concourse Operating Committee shall make its recommendation in writing to the Parks Commission, which will then either approve or deny the application at its next regular meeting. If the application is approved by the Parks Commission, the Mall Coordinator shall issue the permit including any special provisions or conditions imposed by the Parks Commission. Any person aggrieved by the decision of the Parks Commission may appeal to the Common Council by filing a notice of appeal with the City Clerk within ten days of the decision of the Commission, stating the basis upon which the appeal is taken. The Common Council may by majority vote reverse or modify the decision of the Parks Commission.