**IT IS HEREBY ORDERED** that Respondents' Motion for Summary Judgment is **GRANTED** [Doc. 40]; and

**IT IS FURTHER ORDERED** that Petitioners' Motion for Summary Judgment [Doc. 44] is **DENIED.**

A separate Judgment shall accompany this Memorandum and Order.

### *JUDGMENT*

In accordance with the Memorandum and Order filed this date,

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that judgment is entered in favor of Respondents Patricia Bennett, Curators of the University of Missouri, Theodore C. Beckett, Paul T. Combs, Adam B. Fischer, Mary S. Gillespie, Fred L. Hall, Jr., Malaika B. Horne, John A. Mathes, Paul W. Steele, and Hugh E. Stevenson and against Petitioners Knights of the Ku Klux Klan, Realm of Missouri, and Michael Cuffley.

Danny **CROMAN**, Plaintiff,

v.

**CITY OF KANSAS CITY, MISSOURI,
et al., Defendants.**

No. 96–0555–CV–W–8.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 26, 1997.

Danny Croman, Shawnee, KS, pro se.

William D. Geary, Kansas City Missouri City, Attorney's Office Law Dept., Kansas City, MO, Lucille R. Myles, City of KCMO Law Department, Kansas City, MO, Douglas M. McMillan, Kansas City, MO, Walter J. O'Toole, Jr., City Attorney's Office, Kansas City, MO, for Defendants.

## ORDER

STEVENS, District Judge.

In this case, Plaintiff Danny Croman, proceeding *pro se,* alleges that an ordinance passed by the City of Kansas City, Missouri, which restricts the use of amplification devices during nighttime hours, unconstitutionally infringes his First Amendment rights. Plaintiff's complaint is based on 42 U.S.C. § 1983. Now before the Court are cross-motions for summary judgment submitted by the parties (doc. # s 27, 33), and the parties' response and reply suggestions thereto. Also before the Court are plaintiff's Motion of [sic] Request for Imposition of Sanctions (doc. # 34) and plaintiff's Motion in Support of the Court's Acceptance of Introduction of All Disclosure, etc. [sic] (doc. # 35).

Reading his pleadings liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff has brought this action pursuant to 42 U.S.C. § 1983(1) challenging the constitutionality of a city ordinance prohibiting the use of amplification devices in certain areas, (2) claiming that the City of Kansas City has denied him equal protection of the laws by treating him differently from others, and (3) claiming that the City of Kansas City has selectively enforced the ordinance against him.

### I. Undisputed Facts

The following facts are either undisputed or are viewed in the light most favorable to plaintiff: Westport is an area within the city limits of Kansas City, Missouri and is noted for shopping and entertainment, particularly bars and nightclubs. However, Westport is also a residential area. Many homes and apartment buildings are directly adjacent to the entertainment venues.

To address noise problems, the City has adopted several ordinances. Code of Ordinances of Kansas City, Missouri (hereinafter "KCMO Code") § 46–5(8) limits sound levels in places of public entertainment. KCMO Code § 46–191 limits sound levels on private property located in residential districts.

KCMO Code § 46–192 limits sound levels on private property located in commercial districts. KCMO Code § 46–5(11) limits sound levels of radios and amplification.

For a number of years, the city received complaints from Westport area residents regarding noise emanating from bars, nightclubs and the commercial area in general. In May of 1994, the City Council of Kansas City, Missouri passed a sound limiting ordinance specifically directed at the Westport area. KCMO Code § 50–8. The ordinance, among other things, prohibits sound amplification devices from being used in the Expanded Westport Entertainment Area. The relevant section of the ordinance reads:

> No person shall use any loudspeaker, public address system, handheld electrically powered device amplifying speech, or similar device of any kind used to amplify sound, in or upon any public street, sidewalk, alley, bridge, park or other public place within the Expanded Westport Entertainment Area between 11:00 p.m. of any day and 6:00 a.m. of the following day.

KCMO Code § 50–8(b).

Following the adoption of KCMO Code § 50–8(b), the number of complaints about noise from Westport area residents significantly declined. The City has enforced § 50–8(b) against street musicians, § 46–5(11) against persons operating car stereos, and § 46–192 against persons such as bar/nightclub owners either through the City Health Department, a department of the City, or by contacting the Kansas City Police Department, a governmental entity separate from the City.

Before the passage of the ordinance, plaintiff often played music on the streets of Westport, utilizing electric amplification, in an attempt to create income from tips. However, with passage and implementation of § 50–8(b), the amount of tips plaintiff now receives for playing acoustic music on the streets of Westport has been significantly reduced from that which he received while playing amplified music.

## II. Motion for Court's Acceptance of All Disclosure, etc.

In this motion, plaintiff requests that the Court accept affidavits and exhibits not attached to his summary judgment motion. In the interest of having a full record, the Court will grant plaintiff's request to consider his supplemental affidavits and exhibits.

## III. Motion for Sanctions

In this motion, plaintiff requests that the Court impose sanctions upon the City for filing pleadings for the purpose of "bad faith vexation" and for filing pleadings out of time. The Court has thoroughly reviewed the City's pleadings and finds no conduct which would warrant the imposition of sanctions.

## IV. Cross–Motions for Summary Judgment

### A. Standard

Summary judgment is proper upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once a party reliably informs the court of the likely absence of a factual dispute, the other party must specifically demonstrate to the contrary. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, there are essentially no disputed facts. The parties only disagreement is whether either one of them is entitled to judgment as a matter of law based on these facts.

### B. Restriction on free speech

Music, either as commercial speech or as expression, is entitled to protection under the First Amendment. Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The Supreme Court has articulated the standard by which government regulation of speech in public forums is to be judged. "[I]n a public forum the government may impose reasonable restriction on the time, place, or manner of speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communica-

tion of the information.'" *Id.* at 791, 109 S.Ct. 2746 (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).

■ There can be no question that § 50–8(b) is content neutral. The ordinance makes no reference to the content of the message or music being amplified. Plaintiff has made no showing that the ordinance was adopted by the City "because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746. Moreover, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* The challenged ordinance in this case serves to reduce noise, a purpose which is unrelated to the content of the expression.

The Court also finds that § 50–8(b) is narrowly tailored to serve a significant governmental interest. The Supreme Court has on more than one occasion recognized that government possesses a significant interest in noise reduction. *See, e.g., Ward,* 491 U.S. at 796, 109 S.Ct. 2746; *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). However, the means government may employ to reduce noise must be narrowly tailored to achieve that end. Again, the Supreme Court has articulated the standard: "[T]he requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial governmental interest that would be achieved less effectively absent regulation.'" *Ward,* 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). In this case, the decline in complaints about noise shows that the ordinance reduces noise more effectively

than was the case in the absence of the ordinance. The ordinance also does not burden substantially more speech than is necessary to reduce noise in Westport. It merely prevents use of amplifiers on the streets of Westport.[1] This is sufficient for our purposes. This Court cannot engage "in sifting through all the available or imagined alternative means of regulating sound volume."[2] *Ward,* 491 U.S. at 797, 109 S.Ct. 2746.

Finally, the Court finds that there are ample alternative channels of communication left open by the ordinance. Plaintiff and other street musicians are permitted to perform with acoustic instruments at the hours during which electronic amplification is not permitted. "The First Amendment ... does not guarantee [plaintiff] access to every or even the best channels or location for [his] expression." *Carew–Reid v. Metropolitan Transportation Authority,* 903 F.2d 914, 919 (2d Cir.1990) (citing *Taxpayers for Vincent,* 466 U.S. at 812, 104 S.Ct. 2118).

Because the ordinance is narrowly tailored to serve a substantial governmental interest unrelated to the content of the speech and leaves open ample alternative channels of communication, the ordinance is a reasonable time, place and manner regulation of speech. Therefore, the ordinance is valid under the First Amendment.

### C. Equal Protection

■ Plaintiff also claims that the ordinance is unconstitutional because it treats him and street musicians differently than individuals amplifying music on private property. The Supreme Court has articulated the standard that regulations which do not "infringe[ ] fundamental constitutional rights must be upheld against an equal protection

1. The restriction on amplification in this case is similar to the situation presented to the United States Court of Appeals for the Second Circuit in *Carew–Reid v. Metropolitan Transportation Auth.,* 903 F.2d 914 (2d Cir.1990). In *Reid,* the use of amplifiers was banned on platforms in the New York City subway system. The *Reid* Court held that the ban was a reasonable, time, place and manner restriction.

The Seventh Circuit has also found a restriction on amplification to be constitutional. *See*

*Stokes v. City of Madison,* 930 F.2d 1163 (7th Cir.1991).

2. Throughout his pleadings, plaintiff argues that the ordinance is improper because the City could have, for example, limited the size or wattage of the amplifiers used. However, the Supreme Court has made clear that it is improper for a district court to determine if the restriction that a governmental unit has imposed could have been written in a less restrictive manner. *Ward,* 491 U.S. at 797, 109 S.Ct. 2746.

challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). As noted above, the Court finds that § 50–8(b) does not infringe plaintiff's right to free speech because the ordinance is a valid time, place and manner restriction. The Court also finds that the ordinance is supported by a rational basis. The City could have, for example, rationally decided that it would treat amplification on public rights-of-way differently from amplification on private property because it has a greater interest in regulating public rights-of-way. Moreover, if the ordinance is a reasonable restriction under First Amendment analysis, it surely must be "rational." *See Graff v. City of Chicago,* 9 F.3d 1309, 1326 (7th Cir.1993).

Also, as noted above, the City has in place ordinances that control sound levels on private property. *See* KCMO Code §§ 46–5(11), 46–192. All other sources of noise need not be addressed by a single ordinance. *Cf. Stokes v. City of Madison,* 930 F.2d 1163, 1171 (7th Cir.1991) (ordinance prohibiting amplification but exempting churches held content neutral).

### C. Targeted Enforcement

Plaintiff also claims that he, in particular, and street musicians, in general, have been targeted for enforcement of the City's noise ordinances. The Court cannot sustain that contention for two reasons. First, plaintiff has offered absolutely no evidence to support such a claim. At the summary judgment stage, plaintiff is obligated to show that evidence of invidious enforcement exists. There has been no such showing here. Second, plaintiff has not disputed uncontroverted facts offered by the City that it has enforced other noise ordinances against both bar/nightclub owners and operators of loud car stereos.

It must also be noted that the Kansas City Police Department is a separate entity from the City of Kansas City. The Kansas City Police Department is an agency of the State of Missouri. *See State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502, 514 (Mo.

banc 1955); *Hasenyager v. Board of Police Comm'nrs of Kansas City,* 606 S.W.2d 468, 472–73 (Mo.App.1980). Therefore, any claim against the Kansas City Police Department is not *a fortiori* a claim against the City.

### V. Conclusion

Because plaintiff cannot show a constitutional deprivation based on the stated theories, the City cannot be held liable under 42 U.S.C. § 1983. The Court has diligently searched all of plaintiff's pleadings for any meritorious claim, but is unable to find any claim that is not subject to summary judgment.

Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment (doc. # 27) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Leave to Extend Time to Amend Dispositive Motion (doc. # 30) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment (doc. # 33) is DENIED. It is further

ORDERED that Plaintiff's Motion for Imposition of Sanctions (doc. # 34) is DENIED. It is further

ORDERED that Plaintiff's Motion in Support of the Court's Acceptance of Introduction of All Disclosure, etc. (doc. # 35) is GRANTED to the extent that it requests the Court to consider supplemental affidavits and is DENIED in all other respects. It is further

ORDERED that the pretrial conference set for December 5, 1997, and the trial set for January 5, 1998, are canceled. It is further

ORDERED that the Clerk of the Court shall enter judgment in favor of Defendant at Plaintiff's costs.