**EL MAROCCO CLUB, INC. d/b/a/ Club Starzz, Plaintiff,**

v.

**Leo FOX, in his capacity as Finance Director/Treasurer of the Town of Johnston, the Town of Johnston, Stephen J. Angell, Joseph A. Wells, Michael C. Fargnoli, Mary Cerra, and Robert Russo, Individually and in their capacity as members of the Johnston Board of Licenses, William Macera, individually and in his capacity as Mayor elect of the Town of Johnston; and Richard Tamburini, as Chief of Police for the Town of Johnston, Defendants.**

C.A. No. 00–114L.

United States District Court,
D. Rhode Island.

Aug. 22, 2000.

Inc. d/b/a/ Club Starzz ("El Marocco"), for a preliminary injunction. In this case, plaintiff sought a Business Operating After Hours License from the Johnston Town Council in order to present nude dancing along with the service of food between the hours of 1 a.m. and 6 a.m. pursuant to Article VI, § 5–27 of the Johnston Town Code. To plaintiff's chagrin, the governing provision of the Town Code forbids a business that has an alcoholic beverage license, such as El Marocco, from applying for such a license. Plaintiff seeks a preliminary injunction to prevent defendant Town Officials from enforcing that provision of the Town Code pending resolution of this case on the merits. In support of its motion, plaintiff argues that the municipal regulation at issue is an unconstitutional prior restraint on its First Amendment right to freedom of expression. Plaintiff has failed to demonstrate that it will likely succeed on the merits, therefore, its motion for preliminary injunction is denied.

## I. Factual Background

Plaintiff is a Rhode Island corporation with its principal place of business in Johnston, Rhode Island. It operates a nightclub featuring various types of live entertainment including erotic and nude dancing. Accordingly, El Marocco maintains a valid business entertainment license for live entertainment issued by the Johnston Town Council, a Class BV alcoholic beverage license and all other necessary permits for the operation of this business.

The El Marocco nightclub has presented electronic musical entertainment and nude dancing for over fifty years. During this time period it restricted its presentation of entertainment to the business hours between 6:00 a.m. and 1:00 a.m. Therefore, except for five hours in the early morning, El Marocco has provided its exotic and erotic fare to the public over all these years.

Robert S. Ciresi, North Providence, RI, Daniel A. Silver, New Britain, CT, for Plaintiff.

Kathleen M. Powers, Providence, RI, John M. Verdecchia, Providence, RI, for Defendants.

### OPINION AND ORDER

LAGUEUX, District Judge.

The matter presently before the Court is the motion of plaintiff, El Marocco Club,

On or about June 1, 1999, plaintiff applied for and was granted a Business Operating After Hours License to operate its nightclub between 1:00 a.m. and 6:00 a.m. pursuant to Article VI, § 5–27 of the Johnston Town Code. *See* Plaintiff's Exh. 3. Plaintiff maintains that its purpose in procuring the late night operating license was to provide its patrons with breakfast during the early morning hours. This license, no. 65–013110, was granted with a restriction that prohibited nudity and the serving of alcohol during those hours. *See* Plaintiff's Exh. 2. Section 5–27 of the Johnston Town Code provides as follows:

> No shop, store or other place of trade or entertainment in the town shall be kept open between 1:00 A.M. and 6:00 A.M. provided, however, that for sufficient cause shown to the town council, any shop, store or other place of trade or entertainment in the town, *except one holding an alcoholic beverage license*, may be granted a license to keep open for a longer time upon payment of the license fee of ten dollars per year.

Johnston, R.I., Code art. VI, § 5–27 (1977)(emphasis added). It is clear that the ordinance does not permit a business that has an alcoholic beverage license to hold a Business Operating After Hours License. This Court does not understand how El Maracco received its license to operate between 1:00 a.m. and 6:00 a.m. in view of the plain language of the Town Code.

In any event, plaintiff operated during those early morning hours for only a short period of time. Following numerous complaints from members of the community, on or about June 16, 1999 plaintiff was given notice of a Show Cause hearing before the Johnston Town Council with regard to its Business Operating After Hours License.

This Show Cause notice failed to provide plaintiff with a statement of charges, allegations and specifics. Because of those deficiencies in the notice, plaintiff filed an action in the Rhode Island Superior Court to restrain and enjoin the Town Council from conducting the Show Cause hearing. An Associate Justice of the Rhode Island Superior Court issued a temporary restraining order which prevented defendants from holding the hearing until plaintiff was presented with the specific charges or allegations that would be presented at the Show Cause hearing. The Town complied.

On June 30, 1999 a Show Cause hearing regarding plaintiff's Business Operating After Hours License was held before the Johnston Town Council. The Town Council issued a written decision on July 9, 1999 which revoked that License. *See* Stipulation of Facts, Plaintiff's Exh. 1. In its written decision, the Town Council cited numerous reasons for the action taken, including complaints of noise, litter and disturbances filed by nearby residential and commercial residents, evidence of "rave" parties and misrepresentations made by plaintiff in applying for the Business Operating After Hours License with respect to its purpose in operating during the early morning hours. *See* Plaintiff's Exh. 6. Plaintiff sought to appeal by filing a petition for certiorari with the Rhode Island Supreme Court. The petition was denied on September 9, 1999. Therefore, under Rhode Island law, plaintiff had no further avenues available to contest the revocation of its after hours operating license.

Plaintiff now desires to change the form of its late night and early morning entertainment and provide semi-nude dancing entertainment along with the service of food and non-alcoholic beverages between the hours of 1:00 a.m. and 6:00 a.m. at its premises in Johnston. In order to do this, plaintiff must secure a Business Operating After Hours License pursuant to Article VI, § 5–27 of the Johnston Town Code.

On or about February 3, 2000, plaintiff's counsel wrote to the Town Solicitor for the Town of Johnston, indicating that his client wanted to have its Business Operating Af-

ter Hours License reinstated. In a response letter dated February 11, 2000, the Town Solicitor pointed out that § 5–27 of the Johnston Town Code provides that any business which holds an alcoholic beverage license is disqualified from obtaining a license to operate between 1:00 a.m. and 6:00 a.m. *See* Plaintiff's Exh. 4. The letter went on to state that since El Marocco was the holder of a Class BV license to serve alcohol, it could not even apply for such a license.

On March 17, 2000, plaintiff filed a Complaint in this Court seeking equitable and monetary relief. It alleges that defendants have violated plaintiff's constitutional guarantees of free speech and due process. Count I of the Complaint alleges that § 5–27 of the Town Code is an unconstitutional prior restraint on plaintiff's right to free speech. It, therefore, seeks an injunction to keep defendants from enforcing that provision. In Count II, plaintiff claims that its Business Operating After Hours License should be reinstated because the decision of the Town Council to revoke that License allegedly violated plaintiff's due process rights in that it was not afforded a fair and impartial hearing on June 30, 1999. Count III seeks a declaratory judgment that § 5–27 of the Johnston Town Code is unconstitutional on its face because it violates plaintiff's free speech rights as contained in the First Amendment which is made applicable to the states through the Fourteenth Amendment. Finally, plaintiff seeks monetary damages for losses which have resulted to it from application of this allegedly unconstitutional Johnston ordinance.

The only issue presented to the Court at this time is whether plaintiff is entitled to a preliminary injunction against enforcement of § 5–27 of the Johnston Town Code. Plaintiff makes a facial attack on the Johnston ordinance and argues that § 5–27 is an unconstitutional prior restraint on free speech. Plaintiff argues that § 5–27 must be scrutinized under the constitutional standards established by the United States Supreme Court for licensing regimes. In response, defendants argue that the ordinance at issue is content-neutral since it does not seek to regulate any particular type of business. Defendants further argue that because the ordinance is simply a late night business licensing regulation, it cannot constitute a prior restraint on free speech. They contend that the ordinance must be analyzed under the intermediate scrutiny standard as a time, place and manner regulation—a constitutional hurdle which the ordinance easily passes. For the reasons outlined below, this Court denies plaintiff's motion for preliminary injunction.

## II. Standard of Review

A party seeking a preliminary injunction must demonstrate that (1) it is likely to succeed on the merits; (2) there exists the potential for irreparable harm to the movant if the injunction is denied; (3) the injunction will not impose a hardship on the nonmovant which outweighs that to the movant in the absence of an injunction; and (4) the injunction will not adversely affect the public interest. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996); *Westenfelder v. Ferguson,* 998 F.Supp. 146, 150 (D.R.I.1998).

## III. Discussion

Plaintiff's claim under the First Amendment is a valid invocation of its right to free expression. Nude or semi-nude dancing is entitled to First Amendment protection. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)(holding that nude dancing is expressive conduct that is within the outer perimeters of First Amendment protection); *AAK, Inc. v. City of Woonsocket,* 830 F.Supp. 99, 102 (D.R.I. 1993). However, nude dancing and alcohol consumption can produce the secondary effects of crime and deterioration in the community. The town ordinance at issue in this case highlights the fine line that

towns must draw between these two competing interests when enacting legislation.

It should be noted at the outset "that [plaintiff] raise[s] a facial challenge to the licensing scheme. Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/ PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 & n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)); *accord City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 755–59, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)(holding that licensing scheme aimed at expression or expressive conduct is especially ripe for facial challenge).

## A. Likelihood of Success

### 1. Section 5–27 is not a Prior Restraint

■ The threshold task is to determine which standard should be applied in deciding the constitutionality of § 5–27. The decision on that point will dictate the outcome of this matter since the constitutional safeguards required in licensing regimes, *see, e.g., FW/PBS*, 493 U.S. at 225–27, 110 S.Ct. 596, are stricter than those applied to a content-neutral time, place and manner regulation. *See, e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48–50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). A brief recapitulation of the Supreme Court's First Amendment jurisprudence in this area is in order.

In *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Supreme Court held unconstitutional a Maryland criminal statute that required movie theater owners to submit films to the State Board of Censors prior to public display so that the Board could determine whether the films were obscene or tended to incite criminal activity. *See Freedman,*

380 U.S. at 52 & n. 2, 58, 85 S.Ct. 734. The Court noted that the statute "effectively bars exhibition of any disapproved film, unless and until the exhibitor undertakes a time-consuming appeal to the Maryland courts and succeeds in having the Board's decision reversed," and imposes "no time limit ... for completion of Board action." *Id.* at 54–55, 85 S.Ct. 734. The Court further observed:

> Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous ... the censor's determination may in practice be final.

*Id.* at 57–58, 85 S.Ct. 734 (footnote omitted).

The Court struck down the statute as a prior restraint on free speech because it effectively created a loophole in First Amendment protection. The Court said that a system such as Maryland's could only be upheld if it contained three "procedural safeguards designed to obviate the dangers of a censorship system." *Id.* at 58, 85 S.Ct. 734. The system must (1) insure that any restraint prior to judicial review lasts for only a brief, specified duration; (2) offer the opportunity for expeditious judicial review; and (3) place the burden of seeking judicial review on the censor rather than on the individual and force the censor to bear the burden of proof at trial. *See id.* at 58–59, 85 S.Ct. 734; *see also Riley v. National Fed'n of the Blind*, 487 U.S. 781, 801–02, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (striking down a North Carolina statute requiring professional fund raisers, but not others, to obtain licenses before soliciting charitable contributions as an unconstitutional prior restraint).

The most recent pronouncement of the *Freedman* procedural requirements for prior restraints came in *FW/PBS*, where the Court struck down a Dallas City Ordi-

nance regulating sexually oriented businesses on the ground that the ordinance lacked adequate procedural safeguards. *FW/PBS*, 493 U.S. at 226–29, 110 S.Ct. 596. "First, a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *Id.* at 225–26, 110 S.Ct. 596 (quoting *City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). "Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/PBS*, 493 U.S. at 226, 110 S.Ct. 596. In *FW/PBS*, the Supreme Court voided the licensing scheme because it "[did] not provide for an effective limitation on the time within which the licensor's decision must be made [and it] fail[ed] to provide an avenue for prompt judicial review." *Id.* at 229, 110 S.Ct. 596. The Supreme Court's precise concern with the Dallas ordinance derived from the fear that "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.* at 227, 110 S.Ct. 596.

In this case, the application of the *Freedman* and *FW/PBS* requirements are unnecessary. Although § 5–27 does not satisfy the *Freedman* requirements of providing for prompt judicial review and setting a limited time within which the licensor must make a decision, it does not create the potential indefinite suppression of permissible speech. The essence of prior restraints are that "they g[i]ve public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("The relevant question is whether the challenged

regulation authorizes suppression of speech in advance of its expression")(emphasis omitted); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir.1993)(same); *Dial Info. Serv. Corp. v. Thornburgh*, 938 F.2d 1535, 1543 (2d Cir.1991), *cert. denied*, 502 U.S. 1072, 112 S.Ct. 966, 117 L.Ed.2d 132 (1992)(same). That is not the case here.

This writer is familiar with unconstitutional prior restraints on permissible speech. In *D'Ambra v. City of Providence*, 21 F.Supp.2d 106, 113 (D.R.I.1998), this Court concluded that the City of Providence's indefinite moratorium on adult entertainment licenses was an unconstitutional prior restraint on permissible speech under *FW/PBS*. The moratorium in *D'Ambra* gave the Providence Board of Licenses unbridled discretion to reject applicants for a license to engage in that type of business. Therefore, it offended the First Amendment by indefinitely suppressing speech prior to its expression. The sweeping moratorium in *D'Ambra* is easily distinguished from the ordinance at issue here. Section 5–27 only relates to a late night business operating license. Unlike the indefinite ban on all adult entertainment licenses in *D'Ambra*, the ordinance in this case does not deny a forum to the speaker in advance of expression. In this case, plaintiff can still communicate its message in many ways and at other times. Indeed, notwithstanding § 5–27 plaintiff has 19 hours in the day during which it can communicate its message through exotic dancing. Therefore, the *Freedman* and *FW/PBS* procedural safeguards do not apply and § 5–27 is not a prior restraint on permissible speech.

### 2. Appropriate Level of Scrutiny

■ The appropriate level of scrutiny applied to § 5–27 directly correlates to whether the ordinance is content-based or content neutral. An ordinance is content-based if the government has adopted it "because of disagreement with the mes-

sage it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746. Further, a "regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.; see also National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 740 (1st Cir.), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)(holding that town bylaw prohibiting licensed businesses from operating between 1:00 a.m. and 6:00 a.m. was a constitutional restriction of protected speech because it was aimed at protecting private, residential life from commercial activities); *Tollis Inc. v. San Bernardino County*, 827 F.2d 1329, 1332 (9th Cir.1987)("[The content neutral] requirement is met if the involved ordinance is 'aimed to control secondary effects resulting from the protected expression' rather that at inhibiting the protected expression itself." (quoting *International Food & Beverage Sys. v. City of Fort Lauderdale*, 794 F.2d 1520, 1525 (11th Cir. 1986))).

In *National Amusements*, a case almost identical to the present case, the First Circuit upheld a town ordinance banning late night movies as a constitutional time, place and manner regulation. The *National Amusements* Court found an ordinance prohibiting the showing of movies between 1:00 a.m. and 6:00 a.m. to be content-neutral because it did not reference the substance of the speech nor appear to have arisen as a means of suppressing any one speaker. *See National Amusements*, 43 F.3d at 737–39. Further, the town ordinance was enacted to reduce the secondary effects of commercial activities such as noise and disturbances. *Id.* Thus, the ordinance was held constitutional under the intermediate scrutiny standard of *Renton* as a valid time, place and manner regulation.

In *Renton*, the Supreme Court of the United States analyzed an ordinance that prohibited adult motion picture theaters from being located within 100 feet of any residential zone, although the ordinance treated adult theaters differently from other theaters. The Court held that the ordinance was content-neutral because it was aimed not at the content of the films but rather at the secondary effects of such theaters on the surrounding community. *See Renton*, 475 U.S. at 49, 106 S.Ct. 925 (concluding that "at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place and manner regulations" (footnotes omitted)).

It is obvious that the Johnston ordinance is aimed at combating the secondary effects of late-night drinking, rather than the content of the message expressed by nude dancing. Indeed, § 5–27 bans all holders of alcoholic beverage licenses from acquiring a Business Operating After Hours License. Therefore, the ordinance does not single out entertainment establishments that exhibit nude dancing. Moreover, the Supreme Court has noted that a municipality's interest in protecting and preserving quality of life "must be accorded high respect." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)(plurality opinion); *see also Barnes*, 501 U.S. at 583, 111 S.Ct. 2456 (Souter J., concurring)(stating that the interest of government in "preventing prostitution, sexual assault, and other criminal activity" is "plainly a substantial one"). Defendant, Town of Johnston, has asserted that the goal of the ordinance is to curb the undesirable secondary effects associated with late-night operation of commercial vendors of alcoholic beverages. The complaints of town residents at the Show Cause hearing are telling evidence of the secondary effects which can occur when a liquor purveyor stays open 24 hours per day even though it cannot serve alcoholic beverages during the early morning hours.

To clinch matters, plaintiff's argument that the ordinance targets certain businesses flies in the face of the secondary effects doctrine discussed above. According to plaintiff's argument, any regulation that has an effect on fewer than all First Amendment speakers could be deemed to be a form of targeting and thus subjected to strict scrutiny as a content-based regulation. Yet, as stated earlier, the Supreme Court and the First Circuit have recognized that a municipality may enact regulations that serve purposes unrelated to the content of expression even if it indirectly affects some speakers but not others. *See Ward*, 491 U.S. at 791, 109 S.Ct. 2746; *National Amusements*, 43 F.3d at 740. That is the case here since holders of alcoholic beverage licenses are being indirectly regulated by the Johnston town ordinance. The clear aim of the regulation is to curtail the undesirable secondary effects caused by the operation of businesses which serve alcohol throughout the night-time hours.

 Because § 5–27 does not create an outright ban on nude dancing and was enacted to address secondary effects from the late-night operation of businesses that serve alcohol, it must be analyzed under the intermediate scrutiny standard for time, place and manner restrictions. As the Supreme Court explained in *Renton*, the intermediate scrutiny test for determining the constitutionality of a content-neutral time, place and manner restriction, is whether the ordinance is narrowly tailored "to serve a substantial government interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. 925 (citing *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).

 The first *Renton* factor is easily satisfied. This Court has already stated that § 5–27 was passed in order to decrease undesirable secondary effects in the community during late-night hours which result from the operation of businesses that serve alcoholic beverages. This Court has also explained that a municipality's concern with secondary effects is a substantial government interest. A content-neutral time, place and manner restriction is narrowly tailored if the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). Thus, the narrow tailoring requirement does not dictate a least restrictive means analysis. Here, § 5–27 passes the test. There is little doubt that the purpose of § 5–27 is to promote the substantial government interest of tranquility in the community during late-night hours, an interest that would not be achieved as effectively absent the legislation. Thus, the first *Renton* factor is satisfied in this case.

The second factor in the *Renton* test has also been met. This Court has determined that the ordinance allows reasonable alternative methods of communication. The crux of this question is not "whether a degree of curtailment" of speech exists, but rather "whether the remaining communicative avenues are adequate." *National Amusements*, 43 F.3d at 745. The limitations created by the ordinance are not unconstitutional because plaintiff's evidence "does not call into legitimate question the adequacy of the alternate routes for communication" *Id.* El Marocco simply asserts that § 5–27 does not allow for alternative avenues of communication. Such an argument is without merit. Plaintiff, along with similarly situated holders of alcoholic beverage licenses that are restricted by § 5–27, may simply communicate their message during the other 19 hours of the day. Such alternative avenues of communication are more than adequate for plaintiff to communicate its erotic message. In this case, the curtailment of expression created by § 5–27 is minimal.

**62**

Consequently, the ordinance passes constitutional muster under the *Renton* test as a valid content-neutral time, place and manner restriction. In this case the facts are undisputed and the law is clear. Therefore, it is unlikely that plaintiff will succeed on the merits.[1]

## B. Irreparable Harm

■ Plaintiff must also establish that there exists the potential for irreparable harm to it if the injunction is denied. *See Ross–Simons,* 102 F.3d at 15. Although plaintiff does not have to demonstrate that it has already suffered irreparable harm, it must show that such a potential exists. *Id.* Plaintiff contends that any denigration of its rights under the First and Fourteenth Amendments, which result from the enforcement of § 5–27, rises to the level of irreparable harm.

Plaintiff is correct in arguing that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). However, in *Elrod* the Court found that the potential for irreparable harm flowed directly from the fact that there was a substantial likelihood of success on the merits in that case. *Id.* at 374, 96 S.Ct. 2673. That is not the situation here. Because this Court has found that plaintiff will not likely succeed on the merits, there is no potential for a deprivation of plaintiff's First Amendment rights. Plaintiff has not made any other showing of potential irreparable harm. Since plaintiff cannot succeed on the merits and has not suffered a legally cognizable harm, it is unnecessary to consider the other two ele-

ments that plaintiff must prove in order to secure a preliminary injunction.

## Conclusion

For the reasons set forth above, plaintiff's motion for a preliminary injunction hereby is denied.

It is so ordered.

---

1. Plaintiff also has no viable due process claim since it had access to the Rhode Island courts to remedy any alleged procedural deficiencies at the local level. *See Rumford Pharmacy, Inc. v. City of E. Providence,* 970 F.2d 996, 998–1000 (1st Cir.1992)(holding that a court may properly dismiss a procedural due process claim that lacks either allegations or discussion regarding the unavailability of constitutionally adequate state law remedies); *D'Ambra,* 21 F.Supp.2d at 110–11 (same).