Laurel CASEY, and Asterix and
Obelix, LLC, Plaintiffs,

v.

The CITY OF NEWPORT, RHODE IS-
LAND, and Michael D. Mallinoff, in
his capacity as City Manager of the
City of Newport, Defendants.

No. CIV. A. 99–297L.

United States District Court,
D. Rhode Island.

Oct. 24, 2001.

Thomas W. Kelly, Newport, RI, for plaintiffs.

Marc DeSisto, Providence, RI, for defendants.

### Decision and Order

LAGUEUX, District Judge.

This matter is before the Court on cross motions for summary judgment. Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 (1994), alleging that restrictions placed on Asterix and Obelix's entertainment license by the City of Newport ("City") deprive plaintiffs of their First Amendment right to freedom of expression. The Court held a hearing on plaintiffs' motion for preliminary injunction and that was denied. Later after plaintiffs amended the complaint and defendants answered, defendants filed a motion for summary judgment on Counts I, II, and III of plaintiffs' Second Amended Complaint, arguing that the license restrictions are reasonable time, place, and manner restrictions, and therefore no deprivation of constitutional rights under color of state law occurred. Plaintiffs also filed a motion for partial summary judgment on the same three counts. For the reasons that follow, this Court denies plaintiffs' motion for partial summary judgment and grants defendants' motion for summary judgment on the three outstanding counts.

### I. Background

The following facts are not in dispute unless otherwise noted. Plaintiff Asterix and Obelix, LLC (hereinafter "Asterix and Obelix" or "the restaurant") is a restaurant located in Newport, Rhode Island. Plaintiff Laurel Casey ("Casey") is a singer and sometime performer at Asterix and Obelix. Defendant City is a municipal corporation in the State of Rhode Island. Defendant Michael D. Mallinoff ("Mallinoff") is the City Manager of the City of Newport.

Asterix and Obelix is located at 599 Thames Street in the City of Newport, an area which is zoned "Limited Business." Limited Business districts are intended "to allow for less intense commercial uses that are compatible with nearby residential areas and which meet neighborhood needs, rather than those City-wide." Newport, R.I., Ordinances ch. 17.52.010 (2000). Standard restaurants are permitted in a Limited Business district. *Id.* at ch. 17.52.020. The portion of Thames Street where Asterix and Obelix is located extends into an area zoned for residential use. *See* Joint Stipulation Under Local Rule 12.1 ("Joint Stip.") Ex. 4. Thus, the areas to the east, west, and south of the restaurant are residential areas. *Id.*

Asterix and Obelix first applied for a Class A entertainment license, which permits inside entertainment, in 1998. The 1998 application requested permission for one to five musicians and one to three musical instruments. Joint Stip. Ex. 6. The application did not request a vocalist, and the space provided for amplification was marked "None." *Id.* In 1999, Asterix and Obelix's application requested permission for one to five musicians, as well as one to five musical instruments, and one to five vocalists. Joint Stip. Ex. 7. Next to "Amplification," Asterix and Obelix wrote "some." *Id.*

On June 9, 1999, the Newport City Council ("the Council") held a hearing on all applications for Class A entertainment license renewals that requested changes. The Council unanimously approved most of the licenses; however, three license appli-

cations, including the one filed by Asterix and Obelix, were pulled for further comment.

At the time of the June 9, 1999 hearing, Asterix and Obelix was represented by Attorney Gregory Fater. Initially, Attorney Fater represented to the Council that the application requested changes "for the addition of some amplification and vocalist." Joint Stip. Ex. 10. Plaintiff Casey also spoke in support of Asterix and Obelix's application, stating that a singer must have some amplification for her voice. *Id.*

Several residents from the area surrounding Asterix and Obelix also appeared at the hearing. *Id.* They complained of the noise emanating from the restaurant and also stated that the noise produced by the non-amplified performances was excessive and disturbing. *Id.* The residents opposed a change in Asterix and Obelix's entertainment license that would permit amplified music or singing. *Id.*

The Council voted four to two to renew Asterix and Obelix's existing entertainment license but denied the restaurant's request to expand the license to include amplification and singing. *Id.* The Council's decision to deny the restaurant's request was based, in part, on its mistaken belief that the vocalist request was an expansion of Asterix and Obelix's entertainment license application from the previous year. *Id.* The Council realized, soon after the June 9, 1999 hearing, that the vocalist request was not an expansion of the restaurant's 1998 entertainment license, and on June 23, 1999, the Council reconsidered its initial decision to deny the restaurant's request for a vocalist. Joint Stip. Ex. 11.

At the June 23, 1999 City Council meeting, the Council voted unanimously to allow a vocalist to perform at Asterix and Obelix and to add a condition to the restaurant's license that the windows and doors be closed during the entertainment. *Id.* The amplification restrictions, which were applicable to both vocalists and musicians, remained in effect until May 1, 2000, when the Council approved Asterix and Obelix's 2000–2001 entertainment license with amplification permitted for the vocalist only. Joint Stip. Ex. 9. To date, the "no amplification" restriction applies only to musical instruments.

On June 18, 1999, in between the time of the June 9, 1999 and June 23, 1999 Council meetings, plaintiffs filed suit against the City and Mallinoff. Plaintiffs filed their Second Amended Complaint on August 9, 2000, which alleges four separate violations of 42 U.S.C. § 1983 (1994). Plaintiffs, however, agreed to waive any judicial determination of the allegations contained in Count IV of the Second Amended Complaint, and therefore, only Counts I, II, and III are at issue now.

In Count I, plaintiffs allege that the prohibition on singing, in effect for the two-week period beginning on June 9, 1999 and ending June 23, 1999, deprived plaintiffs of their right to freedom of expression guaranteed by the First Amendment. Count II alleges that the 1999 to 2000 "no amplification" restriction applicable to vocalists performing at Asterix and Obelix also violates their First Amendment free speech rights. Finally, Count III of the Second Amended Complaint alleges that the amplification restriction imposed on musical instruments in the year 2000 violates plaintiffs' right to freedom of expression under the First Amendment.

As previously noted, defendants subsequently filed a motion for summary judgment on Counts I, II, and III of the Second Amended Complaint, and plaintiffs filed a motion for partial summary judgment on the issue of liability on the same three counts. The motions were set down

for hearing, and after argument the Court took the matter under advisement. The motions are now in order for decision.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry, therefore, is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Thomas v. Eastman Kodak*, 183 F.3d 38, 42 (1st Cir. 1999). "Summary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991). Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996)

The coincidence that both parties move simultaneously for summary judgment does not relax the standards under Rule 56. *See id.* Barring special circumstances, therefore, the Court must consider each motion separately, drawing inferences against each movant in turn. *See id.*

## III. Discussion

Counts I, II, and III of the complaint are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a cause of action under section 1983, a plaintiff must allege: (1) the violation of a right protected by the Constitution or laws of the United States, and (2) that the defendant was acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Both parties concede that defendants were acting under color of state law. *See* Pls.' Compl. ¶ 2; Defs.' Answer to Pls.' Am. Compl. ¶ 2. Accordingly, the only issue before the Court is whether defendants violated plaintiffs' First Amendment right to freedom of expression.

### A. Time, Place, and Manner Restrictions

"Music, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109

S.Ct. 2746, 105 L.Ed.2d 661 (1989). Amplified music is also afforded constitutional protection. *See Stokes v. City of Madison*, 930 F.2d 1163, 1168–69 (7th Cir.1991)(stating that amplified speech is protected under the First Amendment). The First Amendment constitutional guarantee, however, does not confer absolute protection from government regulation of public expression. *Goldstein v. Town of Nantucket*, 477 F.Supp. 606, 608 (D.Mass.1979). Indeed, the government may impose reasonable time, place, and manner restrictions on protected speech. *See Ward*, 491 U.S. at 791, 109 S.Ct. 2746 (quoting *Clark v. Comm. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)("Expression, whether oral or written or symbolized conduct, is subject to reasonable time, place, or manner restrictions.")). Courts determine the reasonableness of a time, place, and manner restriction by examining the following three factors: (1) whether the restriction is content neutral; (2) whether the restriction is narrowly tailored to serve a significant governmental interest; and (3) whether the restriction leaves open ample alternative channels of communication. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746. If a time, place, and manner regulation fails to satisfy any one of these three requirements, the restriction will be deemed unconstitutional.

In this case, the gravamen of plaintiffs' claims is that the "no singing" and "no amplification" restrictions fail the requirements of the *Ward* test and, therefore, are unconstitutional restrictions on free speech. For the reasons that follow, this Court concludes as a matter of law that the restrictions placed on Asterix and Obelix's entertainment license were and are reasonable and, therefore, constitutional time, place, and manner restrictions.

### 1. The "No Singing" Restriction

■ Plaintiffs argue that the "no singing" restriction fails the *Ward* test because it is not content neutral. In order to determine whether a regulation is content neutral, courts must assess "whether the government has adopted a regulation of speech because of a disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746 (citing *Comm. for Creative Non–Violence*, 468 U.S. at 295, 104 S.Ct. 3065); *see also AAK, Inc. v. City of Woonsocket*, 830 F.Supp. 99, 103 (D.R.I. 1993) (" '[R]egulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment.' "). If the regulation or restriction serves purposes unrelated to the content of the speech, it is deemed content neutral, even if the regulation has an incidental effect on some speakers but not others. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746.

Here, contrary to plaintiffs' contention, the Council did not place the "no singing" restriction on the restaurant's entertainment license because it disagreed with the message plaintiffs sought to convey. Rather, the Council imposed the restriction on the restaurant's entertainment license in order to address the complaints defendants received from Asterix and Obelix's residential neighbors concerning the excessive and disturbing noise emanating from the restaurant during the late night hours. *See* Joint Stip., Ex. 10. This purpose—to eliminate excessive noise—bears no relationship to the content of either Casey's songs or her political satire performance and, therefore, is content neutral. *See, e.g., Ward*, 491 U.S. at 792, 109 S.Ct. 2746 (finding that City's interest in controlling noise " 'has nothing to do with content' "); *Croman v. City of Kansas City, Mo.*, 29 F.Supp.2d 587, 590 (W.D.Mo. 1997) (stating that "[t]he challenged ordi-

nance in this case serves to reduce noise, a purpose which is unrelated to the content of the expression").

The "no singing" restriction also satisfies the other two requirements of the *Ward* test. First, the "no singing" restriction is narrowly tailored to serve a significant governmental interest. The "narrowly tailored" prong requires this Court to determine whether the "no singing" restriction promotes a substantial government interest that would be achieved less effectively without the restriction. *See Ward*, 491 U.S. at 799, 109 S.Ct. 2746. In this case, defendants have a legitimate and substantial interest in regulating noise and sound. *See Stokes*, 930 F.2d at 1170 ("Regulation of sound and noise, especially when competing values are threatened, has long been a recognized government interest."). Defendants' interest in eradicating the excessive noise levels emanating from the restaurant would have been achieved less effectively without the imposition of a limited singing ban. Therefore, the two-week "no singing" restriction that the Council imposed, albeit erroneously in its own view, was, nevertheless, narrowly tailored to further the City's substantial interest in regulating the loud noise emanating from Asterix and Obelix.

Second, the "no singing" requirement satisfies the "ample alternative channels" prong of the *Ward* test. The singing ban, imposed on the restaurant for only two weeks, left open ample alternative channels in which plaintiffs could communicate their respective messages. Indeed, Casey could have performed her songs and political satire at any number of restaurants or locations in Newport during the two-week period of the "no singing" restriction *or* she could have performed at Asterix and Obelix without singing.

Based on the foregoing, this Court concludes that the "no singing" restriction satisfies the *Ward* three-prong test and is a valid time, place, and manner restriction. Defendants, therefore, did not unduly infringe upon plaintiffs' First Amendment rights by imposing the restriction on Asterix and Obelix's entertainment license.

2. The 1999–2000 "No Amplification" Restriction Applicable to Vocalists

■ Plaintiffs argue that the amplification restriction imposed on vocalists from the year 1999 to the year 2000 fails all three prongs of the *Ward* test, and thus, the restriction unconstitutionally abridges plaintiffs' First Amendment rights. First, plaintiffs claim that "the amplification restriction on the Asterix entertainment license, on a nightclub in a business zone in the heart of downtown Newport surrounded by 42 other establishments with no such limitation, is by no means content neutral." Pls.' Mem. Resp. to Defs.' Suppl. Mem. at 3–4. The Court disagrees with that contention. The fact that the Council permits 42 other establishments in the City to use amplifiers is of no relevance to plaintiffs' situation. The Supreme Court jurisprudence instructs that a regulation that incidentally affects some speakers and not others is permissible so long as the regulation serves purposes unrelated to the content of the speech. *See Ward*, 491 U.S. at 791, 109 S.Ct. 2746.

Here, plaintiffs have made no showing that the "no amplification" restriction was imposed for any reason other than to address the complaints received from the restaurant's residential neighbors regarding its excessive noise levels. The clear objective in imposing the restriction was to reduce noise (*see* Joint Stip. Ex. 10), a purpose unrelated to the content of the message plaintiffs sought to convey. *See Ward*, 491 U.S. at 792, 109 S.Ct. 2746.

Second, plaintiffs argue that the amplification ban imposed on vocalists from the

year 1999 to the year 2000 is not narrowly tailored because "the City of Newport has taken away all amplification in a space approximately 50′ × 50′...." Pls.' Mem. Resp. to Defs.' Suppl. Mem. at 2. As the above analysis notes, the government has a recognized and substantial interest in "protecting its citizens from unwelcome noise." *Ward*, 491 U.S. at 796, 109 S.Ct. 2746 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). The inquiry before this Court is whether the "no amplification" restriction is narrowly tailored to serve the City's interest in controlling the volume of noise emanating from the restaurant. The Second Circuit's decision in *Carew–Reid v. Metropolitan Transportation Authority*, 903 F.2d 914 (2d Cir.1990) is instructive on this issue.

In *Carew–Reid*, street musicians brought an action against the City of New York challenging the constitutionality of the City's amplifier ban under the First Amendment. Reversing the district court's determination that the amplifier ban was an unconstitutional time, place, and manner restriction, the Second Circuit held that the amplifier ban was narrowly tailored to serve New York City's interest in noise reduction and, therefore, a reasonable time, place and manner restriction.

In its decision, the Court first noted that the City's purpose for adopting the restriction—to eliminate excessive noise—is a legitimate and substantial interest.

*Carew–Reid*, 903 F.2d at 917 ("The elimination of excessive noise is a substantial and laudable goal."). The *Carew–Reid* Court further explained that the essence of the narrowly tailored requirement focuses on "the source of the evils that the regulation seeks to eliminate and the elimination of those evils without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Id.* at 917 (quoting *Ward*, 491 U.S. at 799 n. 7, 109 S.Ct. 2746). The Court concluded that the source of the excessive noise levels the City's regulation sought to eliminate derived from the medium of expression itself—amplified music. *Id.* at 919. Thus, the Second Circuit held that the amplifier ban was justified because it is the manner itself—the use of amplifiers—that produces the evil—excessive noise—that is the focus of the regulation.[1] *See id.* Other federal courts reviewing the validity of amplifier restrictions have reached the same conclusion. *See, e.g., Stokes v. City of Madison*, 930 F.2d 1163 (7th Cir.1991)(upholding the validity of an ordinance regulating the use of amplification equipment during certain hours as a reasonable time, place, and manner restriction); *Croman v. City of Kansas City, Mo.*, 29 F.Supp.2d 587 (W.D.Mo. 1997)(same).

The principles articulated in the *Carew–Reid* decision are equally applicable to this case. The amplifier ban imposed on Aste-

---

1. Plaintiffs contend that the *Carew–Reid* decision is not applicable to this case because "[t]he Second Circuit upheld the ban on amplified music, but on public safety grounds," and this case does not present any similar public safety concerns. Pls.' Mem. Resp. to Defs.' Suppl. Mem. at 5. A closer reading of the decision, however, reveals that the *Carew–Reid* decision is not based solely on public safety concerns. In its decision, the Second Circuit emphasized that the City has a sub- stantial interest in controlling noise levels (*Id.* at 917) and stated, as dicta, that public safety concerns serve to *reinforce* the City's substantial and legitimate interest in eliminating excessive noise. *Id.* ("In this case, the [City's] interest in eradicating excessive noise is bolstered by serious public safety concerns posed by the noise....."). Thus, contrary to plaintiffs' contention, the *Carew–Reid* decision was not based on public safety grounds.

rix and Obelix's entertainment license by the Council serves defendants' articulated interest in eradicating the excessive noise levels coming from the restaurant late at night. Furthermore, in the present case, the medium of expression itself—amplification equipment—would only serve to exacerbate the existing noise control problem at the restaurant. Certainly then, without the "no amplification" restriction, the City would be unable to control effectively the volume of music, amplified or unamplified, emanating from Asterix and Obelix to the detriment of the peace and tranquility of the restaurant's residential neighbors.

This Court further notes that a time, place, and manner restriction regulating noise does not need to be the least restrictive or least intrusive means of accomplishing that objective. *See Ward*, 491 U.S. at 798–99, 109 S.Ct. 2746. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest,[ ], the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. 2746. The "no amplification" restriction is an adequate solution to the noise problem complained about by the restaurant's residential neighbors and does not burden more speech than necessary. Indeed, plaintiffs could still convey their respective messages, but they had to do so without the aid of an amplifier. This Court concludes, therefore, that the City's amplifier ban, applicable to vocalists from the year 1999 to the year 2000, was an adequate and narrowly tailored response to the excessive and disturbing noise emanating from the restaurant.

The Court's last inquiry is whether the "no amplification" restriction leaves open ample alternative channels of communication for plaintiffs to express themselves.

As this Court has noted previously, "[t]he crux of this question is not whether a degree of curtailment of speech exists but rather whether the remaining communicative avenues are adequate." *El Marocco Club, Inc. v. Fox*, 110 F.Supp.2d 54, 61 (D.R.I.2000). In determining whether the remaining communicative avenues are adequate, the Supreme Court has emphasized that "[t]he First Amendment does not guarantee [plaintiffs] access to every or even the best channels or locations for their expression." *See Taxpayers for Vincent*, 466 U.S. at 812, 104 S.Ct. 2118 (noting that "the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places").

Here, plaintiffs contend that the amplifier ban fails the third prong of the *Ward* test because Casey is unable to convey her artistic message, without the benefit of an amplifier, to an audience dining at the restaurant. This Court concludes that said argument is totally devoid of merit. Defendants correctly point out in their summary judgment memorandum that "[t]he plaintiff restaurant can still feature music and singing and the plaintiff performer can still perform at the restaurant or, if she chooses, at another restaurant that does not have an amplification requirement." Defs.' Mem. Law Supp. Mot. Summ. J. at 5. As aforementioned, plaintiffs are not entitled to access to every location or channel of communication under the First Amendment. *See Taxpayers for Vincent*, 466 U.S. at 812, 104 S.Ct. 2118. The bottom line is that Casey has no right, constitutional or otherwise, to sing at the location let alone with amplification. In short, plaintiffs retained ample alternative channels of communication.

3. The Year 2000 "No Amplification" Restriction Applicable to Musicians

Finally, plaintiffs challenge the validity of the year 2000 "no amplification"

restriction imposed on the restaurant's entertainment license, which is applicable to musicians only. In Defendants' Supplemental Memorandum of Law in Support of their Motion for Summary Judgment, however, defendants raise the argument that these plaintiffs do not have standing to bring First Amendment claims on behalf of musicians employed by plaintiff restaurant. This Court agrees.

The general rule regarding standing* is that plaintiffs must assert their own legal rights and interests and cannot rest their claims to relief on the legal interests of third parties. *See Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In the context of First Amendment litigation, however, the Supreme Court has been willing to recognize an exception to the general rule. *Munson,* 467 U.S at 955, 104 S.Ct. 2839. This exception, known as the overbreadth exception, permits third party standing in circumstances where the court is concerned with the deterrent effect certain regulations may have on free speech should the regulation be challenged by someone whose conduct may be deemed unprotected. *See Taxpayers for Vincent,* 466 U.S. at 798, 104 S.Ct. 2118. Indeed, challenges to overly broad statutes are allowed "not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Munson,* 467 U.S. at 958, 104 S.Ct. 2839.

In order to determine whether the overbreadth exception to the general standing rule applies in a particular case, courts must weigh the "likelihood that the statute's very existence will inhibit free expression." *Taxpayers for Vincent,* 466 U.S. at 799, 104 S.Ct. 2118. It is the plaintiff who bears the burden of demonstrating that the challenged regulation's overbreadth is substantial. *See id.* Importantly, "[t]he requirement that a statute be 'substantially overbroad' before it will be struck down on its face is a standing question only to the extent that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no 'standing' to allege that, as applied to others, the statute might be unconstitutional." *Id.* at 959, 104 S.Ct. 2839.

In the present case, plaintiffs have failed to show that the "no amplification" restriction substantially and unduly abridges their *own* First Amendment rights. It is a foregone conclusion, therefore, that plaintiffs do not have standing to challenge this restriction on behalf of others. Indeed, plaintiffs do not allege nor is it possible for this Court to conclude that the "no amplification" restriction, only applicable to one restaurant's entertainment license, is a substantially overbroad regulation. Thus, this case does not present an opportunity for plaintiffs to assert third party standing. Most importantly, assuming, *arguendo,* that plaintiffs did have standing to bring the musicians' First Amendment claims *or* if the musicians were parties before this Court, the above analysis regarding the validity of the "no amplification" restriction would apply equally to those claims. In summary, the "no amplification" rule is a valid time, place, and manner restriction on instrumental musical speech.

### B. Plaintiff's § 1983 Claim

As discussed above, in order to bring a successful § 1983 claim, a plaintiff must prove (1) the violation of a right protected by the Constitution or laws of the United States, and (2) that defendant was acting

**194**

under color of state law. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The undisputed facts demonstrate that plaintiffs have failed to meet their burden of proving that defendants unconstitutionally abridged their First Amendment right to freedom of expression, and therefore, plaintiff's § 1983 claims necessarily fail.

### IV. Conclusion

For the preceding reasons, this Court denies plaintiffs' motion for partial summary judgment and grants summary judgment in favor of defendants. The Clerk shall enter judgment for defendants forthwith.

It is so ordered.